## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

P.C. CONNECTION, INC. d/b/a )
CONNECTION, )
                                   )
               Plaintiff, )
                                   )
         v.                    )      C.A. No. N23C-01-208 SPL
                                   )
BLUE STREET CAPITAL, LLC, )
                                   )
             Defendant. )

Submitted: July 27, 2023
Decided: October 25, 2023

*Upon Defendant Blue Street Capital, LLC's*
*Motion to Dismiss,*
**DENIED**

## ORDER

This 25th day of October 2023, upon consideration of Defendant's, Blue Street Capital, LLC ("Blue Street"), Motion to Dismiss,[1] Plaintiff's, P.C. Connection, Inc. d/b/a Connection ("Connection"), opposition thereto,[2] and the parties' oral arguments,[3] it appears to the Court that:

---

[1] D.I. 5.

[2] D.I. 6.

[3] D.I. 10.

1.    Connection contends Blue Street has failed to pay $251,000 for IT equipment and services that Blue Street purchased from Connection under contract.[4] Connection brings a single claim for breach of contract.[5]

2.    In lieu of an answer, Blue Street moved to dismiss Connection's complaint under Superior Court Civil Rule 12(b)(6).[6]   Because Connection's complaint alleges circumstances upon which Connection may reasonably be entitled to relief, Blue Street's Motion to Dismiss is **DENIED**.

## BACKGROUND

3.    Connection is a Delaware corporation that supplies specialized IT products and services.[7]   Blue Street is a California technology vendor financing company.[8]

4.    In January 2022, Blue Street requested a quote from Connection for ForeScout manufactured cybersecurity hardware and software (the "ForeScout

---

[4] D.I. 1, Compl., at ¶ 1.

[5] Compl. at ¶¶ 32-36.

[6] D.I. 5, Def.'s Mot. to Dism., at 1.

[7] Compl. at ¶¶ 2, 6.

[8] *Id.* ¶ 3.

products").[9]  Blue Street informed Connection that it intended to purchase the equipment and lease it to PlaneSense.[10]

5.     On January 5, 2022, Connection provided Blue Street a price quote of $68,000 (the "First Price Quote") for the ForeScout products.[11]  The First Price Quote specified the quantities, prices, and descriptions of each ForeScout product that Blue Street requested, set forth the method and price of delivery to PlaneSense, and referenced and incorporated Connection's "Standard Terms and Conditions of Sale" (the "Standard T&Cs").[12]  Connection's Standard T&Cs:

> GOVERN PURCHASES OF PRODUCTS . . . AND ARE LIMITED TO THOSE CONTAINED HEREIN. ANY ADDITIONAL OR DIFFERENT TERMS IN ANY FORM DELIVERED BY YOU . . . ARE HEREBY DEEMED MATERIAL ALTERATIONS AND NOTICE OF OBJECTION TO THEM AND REJECTION OF THEM IS HEREBY GIVEN. SUCH ADDITIONAL OR DIFFERENT TERMS AND CONDITIONS CONTAINED IN ANY FORM PROVIDED BY CLIENT, SUCH AS A PURCHASE ORDER, WILL BE NULL AND VOID; and
>
> BY PLACING AN ORDER FOR PRODUCTS . . . DESCRIBED IN CONNECTION'S SALES QUOTE . . . CLIENT AGREES TO BE BOUND AND ACCEPTS THESE [Standard T&Cs] UNLESS CLIENT AND CONNECTION HAVE SIGNED A SEPARATE

---

[9] *Id.* at ¶ 9.

[10] *Id.*

[11] *Id.* at ¶ 10; Compl. at Ex. B, Purchase Order #13860 ("First Purchase Order and Price Quote").

[12] First Purchase Order and Price Quote at 4-5.

AGREEMENT WHICH EXPRESSLY OVERRIDES THESE TERMS, IN WHICH CASE THE SEPARATE AGREEMENT WILL CONTROL.[13]

6. On January 26, 2022, Blue Street sent Connection purchase order #13860 (the "First Purchase Order").[14] Blue Street's First Purchase Order identified the "Equipment Description" as "Per Attached Quote #12340131.03" (Connection's First Price Quote).[15] Further, Blue Street's First Purchase Order listed the purchase price as $68,000, the price quoted by Connection in the First Price Quote.[16]

7. Connection delivered the equipment identified in the First Price Quote and First Purchase Order to PlaneSense on February 17, 2022.[17] On August 12, 2022, Connection sent Invoice #73154962 (the "First Invoice") to Blue Street, seeking payment of $68,000 for the ForeScout equipment.[18]

8. In March 2022, Blue Street requested a second quote from Connection for "customized data domain and cyber recovery equipment" manufactured by Dell

---

[13] Compl. at Ex. A, Connection Terms and Conditions of Sale ("Standard T&Cs").

[14] Compl. at ¶ 12.

[15] *See, generally*, First Purchase Order and Price Quote.

[16] *Id.* at 1.

[17] Compl. at ¶ 14.

[18] Compl. ¶ 15; Compl. at Ex. C, Invoice #73154962 ("First Invoice").

Technologies (the "Dell products").[19]  Again, Blue Street expressed its intent to purchase the Dell products for lease to PlaneSense.[20]

9.  On March 14, 2022, Connection sent a price quote to Blue Street which set forth a purchase price of $183,000 for the Dell products (the "Second Price Quote").[21]  The Second Price Quote referenced and incorporated Connection's Standard T&Cs.[22]

10.  On March 17, 2022, Blue Street sent Purchase Order #13959 to Connection for the Dell products and, as with the first transaction, attached the Second Price Quote to describe the items.[23]  The $183,000 purchase price on the Second Purchase Order matched the Second Price Quote.[24]

11.  Connection delivered the Dell products to PlaneSense in two shipments on May 23, 2022, and August 4, 2022.[25]

---

[19] Compl. ¶ 17.

[20] *Id.*

[21] *Id.* at ¶18; Compl. at Ex. D, Purchase Order #13959 ("Second Purchase Order and Price Quote") at 4.

[22] Second Purchase Order and Price Quote at 4.

[23] *See, generally, id.*

[24] *Id.* at 1.

[25] Compl. at ¶ 22.

12. On August 3, 2022, Connection sent Blue Street Invoice #73115985 (the "Second Invoice") seeking payment of $183,000 for the Dell products.[26]

13. On July 29, 2022, PlaneSense notified Connection that it wanted to return the ForeScout and Dell products.[27] Connection informed PlaneSense that it could not return the products based on return policies contained in Connection's Standard T&Cs incorporated into the contract with Blue Street.[28] The Standard T&Cs state:

> **All Returns Are Subject to Manufacturers' Policies**
> Return privileges are subject to various manufacturer's policies. Many manufacturers have imposed certain return restrictions. Consequently, PC Connection reserves the right to decline specific return requests based on those restrictions. Be sure to ask your Account Manager about specific return conditions before you purchase any item.
>
> **Final Sale of Certain Products**
> In addition to manufacturer restrictions, the following products are final sale items and are not returnable to PC Connection for return or exchange for any reason: Specific Products:
> - Custom configured products, Special ordered products …[29]

---

[26] *Id.* at Ex. E, Invoice #73115985 ("Second Invoice").

[27] Compl. at ¶ 28.

[28] *Id.* at ¶ 29.

[29] *Id.* at ¶ 27; Standard T&Cs; Compl. at Ex. F, Connection's Return Policy.

Connection informed PlaneSense that the products could not be returned because: (1) the equipment was subject to the manufacturer's 30-day return policy, and more than 30 days had elapsed since the equipment was delivered; (2) the software was not returnable pursuant to the manufacturers' end-user licensing agreement; and (3) the customized Dell products were not returnable under Connection's return policy.[30]

14. On October 4, 2022, Blue Street informed Connection that it had "decided to shut these last two PlaneSense projects down," and that PlaneSense "will not be accepting the equipment."[31] Blue Street has not paid the Connection invoices.[32]

15. On January 25, 2023, Connection filed a complaint in this Court alleging Blue Street breached its contract by failing to pay for the ForeScout and Dell products.[33] On March 20, 2023, Blue Street responded by moving to dismiss the complaint under Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[34]

---

[30] *Id.* at ¶29.

[31] *Id.* at ¶ 31.

[32] *Id.*

[33] Compl.

[34] Def.'s Motion to Dismiss.

## STANDARD OF REVIEW

16. Under Superior Court Civil Rule 12(b)(6), all well-pleaded allegations must be accepted as true.[35] "For a complaint to survive a motion to dismiss, it need only give 'general notice of the claim asserted.'"[36] The Court must assess whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint.[37] If the plaintiff may recover, the motion must be denied.[38] The trial court must draw all reasonable factual inferences in favor of the non-moving party.[39] The Court need not "accept conclusory allegations unsupported by specific facts or ... draw unreasonable inferences in favor of the non-moving party."[40]

## ANALYSIS

17. While the parties do not dispute the existence of contracts for the sale and delivery of the ForeScout and Dell equipment, they disagree as to the specific document (price quote or purchase order) and terms governing the transaction. "On

---

[35] *Page v. Oath Inc.,* 270 A.3d 833, 842 (Del. 2022).

[36] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (cleaned up).

[37] *GEICO General Insurance Co. v. Green,* 2022 WL 1052195, at *5 (Del. Apr. 8, 2022).

[38] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[39] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[40] *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011).

a motion to dismiss for failure to state a claim, a trial court cannot choose between two differing reasonable interpretations of ambiguous documents[, and] . . . [d]ismissal is proper *only* if the defendant's interpretation is the only reasonable construction as a matter of law."[41]

18.     Blue Street contends that its purchase orders define the contract and that Connection cannot prove that Blue Street breached the contract because Connection failed to allege a condition precedent to Blue Street's obligation to pay for the products under the contract.[42]  Blue Street points to terms included in its First and Second Purchase Orders that condition its obligation to make payment to Connection on the written acceptance of the products by PlaneSense.[43]  Thus, Blue Street contends, because Connection does not allege that PlaneSense issued a written acceptance of the products delivered, the Complaint fails to state a claim for breach of contract.

19.     Connection posits that its Price Quotes, together with the incorporated Standard T&Cs, constitute the offers upon which its contractual relationship with Blue Street was forged.[44]  Connection argues that its Complaint sufficiently alleges

---

[41] *Vanderbilt Income & Growth Associates, LLC., v. Arvida/JMB Managers, Inc.,* 691 A.2d 609, 613 (Del. 1996) (cleaned up).

[42] D.I. 5 at 3-4.

[43] *Id.* at 3.

[44] D.I. 6 at10.

Blue Street accepted its offers and, by not paying the invoices, breached the contracts.

20. Both parties cite to the complaint and its attachments to support their respective positions. While the Court's review of a motion to dismiss is typically confined to the allegations contained within the Complaint, there are "three specific instances when a trial court may look beyond the complaint: (1) when a document is integral to a claim and incorporated into a complaint; (2) when the document is not being relied upon to prove the truths of its contents; or (3) when the document is an adjudicative fact subject to judicial notice."[45] Here, the Court considers the Complaint and the various documents incorporated by reference.

21. A breach of contract claim requires: "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."[46] Under Delaware law, a contract exists when "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."[47] On a motion to dismiss, the trial court "must view the facts underlying the contract's formation in the light

---

[45] *Bredberg v. Bos. Sci. Corp.*, 2021 WL 2816897, at *3 (Del. Super. Jul. 2, 2021) (cleaned up).

[46] *Tygon Peak Capital Management, LLC v. Mobile Investments Investco, LLC*, 2023 WL 4857281, *3 (Del. Ch. Jul. 31, 2023) (cleaned up).

[47] *Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

most favorable to the non-moving party."[48]  Whether the parties intended to form a contract is a question of fact that ordinarily is not resolved on a motion to dismiss.[49]

22.    Viewing the facts in the light most favorable to Connection, its First and Second Price Quotes were offers, and Blue Street's First and Second Purchase Orders were acceptances of those offers.  Price quotes may be treated as offers,[50] purchase orders may operate as acceptances,[51] and whether additional terms are included in the contract depends on whether they are material to the contract, which is a question of fact.[52]  Thus, on these facts, it is reasonable to conclude that the

[48] *Handler Corp. v. W. Am. Ins. Co.*, 2022 WL 175769, at *2 (Del. Super. Ct. Jan. 19, 2022) (cleaned up).

[49] *See Eagle Force Holdings, LLC v. Campbell,* 235 A.3d 727, 735 (Del. 2020) ("[w]hether a party manifested an intent to be bound is a question of fact"); *LCT Capital, LLC v. NGL Energy Partners LP*, 2016 WL 5793724, at *6 (Del. Super. Ct. Oct. 3, 2016) ("Under Delaware law, contract formation is generally a question of fact").

[50] *Falcon Tankers, Inc. v. Litton Sys., Inc*., 355 A.2d 898, 904 (Del. Super. Ct. Mar. 29, 1976); *see also, MLMC, Ltd. v. Airtouch Commc'ns, Inc*, 215 F. Supp. 2d 464, 477-78 (D. Del. 2002) (if price quote "comes in reply to a specific request for an offer, contains language of commitment, or comes after prolonged negotiations, and . . . contains detailed terms, it may be deemed an offer").

[51] *Pfizer Inc. v. Advanced Monobloc Corp.*, 1998 WL 110129, at *4 (Del. Super. Ct. Jan. 23, 1998) (cleaned up); *see also, Falcon Tankers, Inc.*, 355 A.2d at 905 (noting that § 2-207 is "concerned with balancing the desire of the parties to control their own terms against the general interest of establishing an enforceable contract where economic reality makes it obvious that the parties have intended one").

[52] *See Leonard Pevar Co. v. Evans Products Co.*, 524 F. Supp. 546, 552 (D. Del. 1981) ("Without the express assent by the parties no contract is created pursuant to § 2-207(1)"); *see Eagle Force Holdings*, 235 A.3d at 735 ("[w]hether a party manifested an intent to be bound is a question of fact"); *LCT Capital, LLC*, 2016

parties intended to be bound by the terms of Connection's Price Quotes, and Connection's complaint asserts Blue Street breached its duty under contracts between Connection and Blue Street.

## CONCLUSION

23. To succeed under Superior Court Civil Rule 12(b)(6), Blue Street must establish that Connection cannot prevail under any reasonably conceivable set of circumstances alleged in the Complaint.[53] Blue Street fails to demonstrate that there are no reasonably conceivable circumstances under which Connection's price quotes, together with its Standard T&Cs, control the contract between the parties. Because the Complaint alleges facts that could reasonably be found to impose a contractual obligation upon Blue Street to pay for the products supplied by Connection, the Complaint sufficiently states a claim for breach of contract. Accordingly, Blue Street's Motion to Dismiss under Rule 12(b)(6) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge

---

WL 5793724, at *6 ("Under Delaware law, contract formation is generally a question of fact").

[53] *VLIW Tech.*, 840 A.2d at 615 (citation omitted).